IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

VICKI L. ROBINSON,

Case No. 1:11-cv-03119-CL

Plaintiff,

v.

**ORDER**

CENTRAL POINT SCHOOL
DISTRICT 6, et al,

Defendants.

CLARKE, Magistrate Judge.

This matter comes before the court on defendants' motion (#35) for summary judgment.

Plaintiff Vicki Robinson ("Robinson") filed this action on September 29, 2011, against

defendants Central Point School District 6 ("the District"), Bret Moore ("Moore"), Kerry

Bradshaw ("Bradshaw"), June Brock ("Brock"), Jolee Wallace ("Wallace"), and Cindy Tilley-

Case ("Tilley-Case"), as members of the Central Point School District 6 Board of Directors

(collectively, "the Board"), and Superintendent Randal Gravon ("Gravon"). Plaintiff alleges a

42 U.S.C. § 1983 claim based upon denial of substantive and procedural due process against all

defendants. Against the District, plaintiff alleges breach of contract, unpaid wages, and wage

claim retaliation. For the reasons stated below, the motion is denied.

## STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (*quoting* Anderson, 477 U.S. at 248).

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076. Put another way, summary judgment should be granted when the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. Anderson, 477 U.S. at 252. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995).

## BACKGROUND

This case is before the court on a motion for summary judgment by the defendants; therefore the facts will be construed in the light most favorable to plaintiff. Plaintiff has worked for the District since 1987, serving the last few years as the Director of Business Services/Deputy Clerk. She was, essentially, the chief financial officer of the district, managing the business office, the budget, the payroll department, and the accounts payable department.

Plaintiff was employed pursuant to a rolling three year contract, extended most recently in March, 2011, and she received good reviews during the majority of her time with the District. For example, in 2007 Superintendent Gravon commended her success in improving the operations of the business office, calling her a "significant asset" in the District's restructuring process.

In 2006, Gravon reviewed district administrator contracts and noted that some employees, including the plaintiff, had been allowed to accumulate unused vacation days without limitation. Thereafter, an addendum dated October 14, 2003 was found purporting to limit vacation accrual to 35 days, though neither plaintiff nor Defendant Gravon had been aware of the addendum. This addendum was not in plaintiff's contracts up to that time. The matter was taken to the Board, and contracts starting in 2006-07, including the plaintiff's, were changed to limit vacation accrual to no more than 35 days. Nevertheless, the plaintiff believed that she was entitled to preserve the days she had already accrued. The Board disagreed. In 2008, the District's legal counsel Timothy Gerking reviewed the matter and presented a legal opinion agreeing that "the District would not have the legal right to retroactively take away Ms. Robinson's vacation days in excess of 35 that she had a contractual right to accumulate prior to August 2006" when the contracts were changed.

Then, in 2009, the District's bookkeeper Sandy Blackman committed suicide after the plaintiff and the District's accountant discovered a discrepancy in student body funds at the high school. It was determined that Blackman had embezzled over $100,000 over a period of several years. At the time, members of the Board questioned why the plaintiff did not discover the discrepancy sooner.

However, on March 8, 2011, the plaintiff's contract was renewed for another three years. Superintendent Gravon recommended this decision to the Board, without any qualms concerning whether the plaintiff was implementing the efficient business strategies recommended to the business office back in 2005 and 2006 when the District began its restructuring process.

Finally, the incident for which the plaintiff was placed on administrative leave occurred in the spring of 2011. The District was preparing to face a shortfall of $4.3 million in the 2011-12 budget, and the Board was exploring a number of budget cuts, layoffs, and other options to solve the crisis when the plaintiff and the District's accountant discovered an error had been made. In developing the budget, the business office mistakenly included 15 unfilled teaching positions, which had been budgeted for but never filled in the previous year's budget. As a result, the shortfall for the 2011-12 budget would be closer to $2.8 million, meaning the deficit had been overstated by about $1.5 million.

Plaintiff informed Superintendent Gravon of the error on April 4, 2011, and she offered to cancel the vacation she planned to take two days later to Hawaii to celebrate her twenty-fifth wedding anniversary. Gravon told her this would not be necessary, so she did not cancel her trip. On April 12 Gravon informed the Board of the error, and a special board meeting was called to discuss the matter two days later. After the special meeting on April 14, Gravon called the plaintiff in Hawaii to tell her that she was being placed on administrative leave. On April 18,

2011, Gravon sent plaintiff a letter confirming that decision. At the same time, he hired Mike Schofield, CPA, and William Dierdorff, Ed.D., to conduct an overall review of the business office; they issued a report on May 2, 2011. It was around this time that Holly Haviland, the District's accountant, heard Gravon state, with respect to the Board's intentions to terminate someone, "it's either Vicki or me, and it's not going to be me."

On May 23, 2011, Gravon directed Dennis Flenner, the District's insurance agent through Proctors Insurance in Medford, to cancel the plaintiff's surety bond through Old Republic Surety Company.[1] The next day, May 24, Gravon met with Dierdorff and Schofield about their report; they developed a number of questions to ask the plaintiff about her management of the business office. Gravon did not meet with the plaintiff, or ask her the questions they had developed, but instead met that same day with the Board about the investigation and his recommendation for the plaintiff's dismissal. On May 26, Gravon informed the plaintiff in a letter that he planned to recommend to the Board that she be terminated. The letter mentioned inefficiencies in the business office, underuse of technology in budget development, and concerns about how student body funds were handled. Plaintiff's attorney wrote a letter in response to the District's counsel, objecting and claiming that Gravon had prejudged matters without giving the plaintiff any opportunity to respond.

In early June, the plaintiff ran into Defendant Bradshaw at the local grocery store. Bradshaw told the plaintiff that he was sorry for the situation she was in, and she told him that as the Board Chair, he could make the difference at her upcoming hearing. Bradshaw told her that "the decision was already made and that it was above him."

---

[1] Flenner later learned that the plaintiff was still on the District payroll, and her bond was reinstated on July 14, 2011.

On June 15, 2011, Superintendent Gravon sent an e-mail to the Board, expressing his appreciation for the Board having made "tough decisions" and for the Board's thoughtfulness while facing such issues as "the loss of our business manager." Gravon said that the Board's "most pressing need is to replace Vicki." He then took steps to interview and hire Spencer Davenport, the Eagle Point controller at the time. Instead of being hired as a "director," which was the plaintiff's position, Davenport was hired as a "finance manager," and told he was replacing Holly Haviland, the District's former accountant. He recognized, however, that the job description required more than what Ms. Haviland had been doing, and that there was a good chance that he would end up in charge of the business office. The official offer to Davenport took place at the end of July.

On July 14, 2011, plaintiff sent a letter to the District responding to the points raised by Gravon in his May 26 letter. On July 20, Gravon responded by letter again, sending a copy to the Board. Plaintiff and her attorney addressed the Board on August 11, 2011. The Board then deliberated and voted to accept Gravon's recommendation to terminate the plaintiff's employment with the District.

Defendant Tilley Case, a member of the Board, stated that her main reason for voting to terminate the plaintiff was "the issue of trust." Her lack of trust dated back to an incident involving some trees at her local middle school that had to be removed due to disease. The trees had been there a long time, and "had huge sentimental value to the community." Tilley Case asked the plaintiff to notify her when the decision was made to remove the tree, but she was not notified until the trees were being taken down. Tilly Case was very upset by this, and considered it dishonest. She said she eventually got over this incident and gave the plaintiff another chance due to Superintendent Gravon's recommendations, since "he's the one that has to run the

District," but that the incident did factor into her vote to terminate the plaintiff in August, 2011. In terms of Gravon's recommendation for termination, she indicated that it was an important consideration because "he knew things that we didn't know."

Defendant Brock stated that the budget error was not the only reason she voted to terminate the plaintiff. In describing her feelings about the plaintiff, Brock repeated the word "dictatorial" more than once. She felt that the plaintiff had taken advantage of the system regarding the dispute over her accrued vacation. She also stated she was angry at the plaintiff because she believed the plaintiff should have discovered the embezzlement situation with Sandy Blackman sooner. The budget error also made her angry, as well as personally embarrassed because the Board had been discussing major budget cuts with the community, and the Board members "looked like fools in front of the public." Nevertheless, she said that if the budget error had been the only issue with the plaintiff, she would have been more understanding.

Defendant Wallace believed the plaintiff should have been fired after the embezzlement situation came to light. Defendant Bradshaw also felt that the embezzlement situation was the plaintiff's responsibility, although he did not think the plaintiff should have been fired for it at the time. After the budget error, however, he believed that enough mistakes had been made that she should be terminated. He cited a record of poor interactions with community members, who were not happy with the service they received in the business office. He also suggested that the issue with her vacation accrual would not have happened with another employee because there would have been someone looking into the situation. He said that "since she was the overseer of those kinds of numbers, and that kind of information . . . she should have brought that to somebody's attention." Finally, Defendant Moore stated that Gravon's recommendation was very important in his decision to terminate the plaintiff.

## SUMMARY

As a District employee deprived of her property interest in her continued employment, the plaintiff was entitled to notice and a meaningful opportunity to be heard prior to her termination. The defendants claim that the notice and hearing she received was sufficient to satisfy the low bar of procedural due process. However, due process is one of the most fundamental of all civil rights and the phrase "meaningful opportunity to be heard" has to be taken seriously and enforced. The word "meaningful" is at issue in this case.

In this case, the defendants may have given the plaintiff all the process she was due, but the plaintiff has shown a genuine issue of material fact sufficient to withstand defendants' motion for summary judgment. She has raised issues of fact pertaining to the notice she received, whether or not her opportunity to be heard was meaningful, and whether or not the superintendent and the Board of Directors were biased against her. Collectively, these issues create a question of fact that must be decided by a jury.

The court will continue to exercise supplemental jurisdiction over the plaintiff's state law claims, which are substantially related to the federal law claims such that they form part of the same case or controversy. Defendants have not shown that they are entitled to summary judgment as to these claims, and their motion is denied in its entirety.

## DISCUSSION

### I.     Substantive due process claim is moot

"The concept of 'substantive due process' . . . forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (*quoting* United States v. Salerno, 481 U.S. 739, 746 (1987)). "Conduct

intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998). By contrast, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." Id.

Plaintiff indicated in her Response in Opposition to Defendants' Motion for Summary Judgment (#38) that she has withdrawn her substantive due process claim.

## II. Procedural due process claim survives summary judgment

The Fourteenth Amendment provides, "No State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A § 1983 claim based upon the deprivation of procedural due process has three elements: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." Portman v. Cnty. of Santa Clara, 995 F.2d 898, 904 (9th Cir.1993). "The essential requirements of [a] pre-termination process are notice and an opportunity to respond." Clements v. Airport Authority of Washoe Cnty., 69 F.3d 321, 332 (9th Cir.1995).

### a. Notice

In Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), the United States Supreme Court held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546.

The defendants claim that the plaintiff received proper notice in the form of multiple letters detailing the charges against her prior to her official termination in August. However, the plaintiff has raised issues of fact regarding whether or not the letters sufficiently informed her of

the scope of the superintendent's investigation into the business office, and the real nature of the Board's evaluation of her work history, beyond simply the matter of the budget error. In other words, plaintiff contends the budget error was simply window dressing for a number other historical issues that drove her termination. It may be that her conversations and letters from Defendant Gravon gave the plaintiff the required notice. However, the plaintiff has raised a sufficient question of fact to present the issue to a jury.

### b. Meaningful opportunity to be heard

Plaintiff was given a hearing in front of the Board before her position with the District was officially terminated, and defendants claim that such a hearing is all that is required for due process. There is no question that often a tentative decision to terminate a public employee will have been made before a hearing. However, the opportunity to be heard must be meaningful, and the plaintiff has shown sufficient evidence that the final decision to terminate her may have been made long before her hearing, and steps were taken to replace her, such that she did not receive the process she was due. It is her position that the hearing was simply a sham that cannot comport with due process.

In Adams v. School District Number 5 of Jackson County, the court determined that the district employee was given due process, even though he claimed that the school board had made up its mind to terminate him before he received a hearing. 699 F. Supp. 243, 246 (D. Or. 1988). In that case, the employee first received a vote of "no confidence" from eighty percent of the members of the local education association. Id. at 244. He then received two negative performance reviews, seven months apart. Id. After the first, the school board voted not to renew the employee's contract, which would expire the following year. Id. After the second bad review, the school board informed the employee that it had tentatively voted to terminate his

existing contract and that he had twenty days to request a hearing. Id. Two area newspapers reported the next day that he had been terminated. Id. The employee requested an independent hearings officer, but the board refused his request. Id. The court found that this refusal did not implicate due process. Id. In particular, the court reasoned that the school board's prior participation in evaluating the employee did not disqualify it from deciding whether he should be terminated. Id. The employee did not overcome the presumption of honesty and integrity given to the board, and he received an opportunity to present his side of the story. Id. Therefore, summary judgment was granted on the issue of due process. Id. at 247.

The case before us can be distinguished from Adams. In Adams, the only evidence that the board made up its mind before the hearing was the fact that it had participated in prior evaluations of the employee's work performance, and then refused to give him an independent hearings officer. By contrast, the plaintiff in this case has alleged a number of facts to support the assertion that the decision to terminate her was final long before her hearing in August, 2011. First, her surety bond was cancelled in May. Second, at least two statements were made acknowledging that the decision was final. Then-chairman of the Board, Bradshaw, told plaintiff that "the decision was made and it was above him." Superintendent Gravon told the Board via email that the "most pressing need is to replace Vicki," noting the "loss of our business manager." Finally, Gravon took active steps to replace her position, interviewing and ultimately hiring someone in July. While the position filled was technically the one below the plaintiff's, there appeared to be a clear understanding that the person hired would ultimately take over her job. A reasonable jury could find that the plaintiff was effectively terminated and replaced weeks before her hearing.

### c. Bias of superintendent

The Ninth Circuit has established that "a subordinate cannot use the nonretaliatory motive of a superior as a shield against liability if that superior never would have considered a dismissal but for the subordinate's retaliatory conduct." Gilibrook v. City of Westminster, 177 F.3d 839, 855 (9th Cir. 1999). "Even if the ultimate decision-maker can establish that the adverse action was not in retaliation for protected conduct, a subordinate with a retaliatory motive can be liable if an improper motive sets in motion the events that lead to termination that would not otherwise occur." Strahan v. Kirkland, 287 F.3d 821, 826 (9th Cir. 2002) (internal quotation omitted).   By contrast, a decision maker's independent investigation and a "wholly independent decision" to take an adverse employment action can negate a causal link between the subordinate's retaliatory motive and the adverse employment action. Lakeside–Scott, 556 F.3d at 806. The inquiry turns on an "'intensely factual' determination of whether the superior never would have made this decision 'but for the subordinate's retaliatory conduct.'" Id. at 805 (*quoting* Gilbrook, 177 F.3d at 854–55).

In this case, the plaintiff has shown evidence that the Defendant Gravon was impermissibly biased. He made statements indicating that he thought his own job was in jeopardy if the plaintiff wasn't fired, saying, "it's either Vicki or me and it's not going to be me." He was involved in the decision to put her on administrative leave while she was on vacation and had no opportunity to respond, he conducted the investigation of the business office without questioning her or hearing her side of the story, and he took actions to cancel plaintiff's bond and find a replacement for her long before she was given an opportunity to be heard.

Plaintiff has also shown evidence that the Board followed Defendant Gravon's lead when it came to the plaintiff's employment. Even though several members had reservations about the plaintiff, the Board renewed her contract in March, 2011, based on Gravon's recommendation.

As noted above, Gravon was heavily involved in every step of plaintiff's termination. Board members Moore, Bradshaw, and Tilley-Case all testified that they put their trust in Gravon's judgment regarding the decision to terminate her employment. Bradshaw told the plaintiff in June that "the decision was made and that it was above him." A reasonable jury could thus find that the Board would never have made the decision to terminate the plaintiff but for Defendant Gravon's impermissible bias against her.

### d. Bias of the Board members

The Ninth Circuit has recognized that a plaintiff may base a § 1983 claim on the government's infringement of a citizen's right to an unbiased tribunal. Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir.1995). A fair trial in a fair tribunal is a basic requirement of due process. In re Murchison, 349 U.S. 133, 136 (1955). This applies to administrative agencies which adjudicate as well as to courts. Gibson v. Berryhill, 411 U.S. 564, 579 (1973).

To make out a claim for unconstitutional bias, the plaintiff must "overcome a presumption of honesty and integrity" on the part of decisionmakers. Withrow v. Larkin, 421 U.S. 35, 47 (1975). Prior familiarity with the case or a party, or even prior investigatory actions by the tribunal is not, by itself, sufficient to automatically overcome the presumption. Id. at 46-52. The plaintiff must show that the adjudicator "has prejudged, or reasonably appears to have prejudged, an issue." Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir.1992), cert. denied, 506 U.S. 1054 (1993) (citation omitted). A plaintiff may establish that he has been denied his constitutional right to a fair hearing before an impartial tribunal if the proceedings and surrounding circumstances demonstrate actual bias on the part of the adjudicator. *See* Stivers, 71 F.3d at 741 (*citing* Taylor v. Hayes, 418 U.S. 488, 501–04 (1974)).

Clearly, the members of the Board have a long history and working relationship with the plaintiff. This, by itself, does not automatically disqualify them from deciding the issue of her termination. Complete independence from the situation is not a requirement in a case like this. The question instead is whether the history of their interactions as a whole is contentious enough to overcome the presumption of honesty and integrity afforded to the Board as the decision-makers.

Plaintiff has raised several material questions of fact regarding whether the Board harbored ill-will toward the plaintiff or prejudged her such that her hearing was not meaningful according to due process. The evidence shown supports that the superintendent was actively taking steps to hire her replacement, and a member of the Board told her that "the decision was made" weeks before her hearing. The contentious interactions between the Board and the plaintiff over her accrued vacation days, the embezzlement scandal, and Board members' issues with her personally are sufficient at this stage of the case to overcome the presumption of honesty and integrity given to such decision-makers, and they present issues for a jury.

### e. Conclusion

Collectively, the issues raised by the plaintiff as to whether she received proper notice and an opportunity to be heard, and whether Gravon and the Board were biased against her, create a genuine issue of material fact as to whether or not she received due process. The issues must be decided by a jury; therefore, summary judgment is inappropriate, and defendants' motion is denied.

### III.   Individual defendants may be liable under § 1983

Plaintiff and defendants dispute whether Gravon and the members of the Board are sued in their official or individual capacities. A pleading that alleges a violation under § 1983 may

name defendants in an individual capacity, an official capacity, or both. Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985). An individual capacity suit seeks to impose personal liability upon a government official, whereas an official capacity suit is brought against the government entity itself. Id. at 165–166. The court must look to the nature of the proceedings to determine whether a plaintiff has brought suit against defendants in an official capacity, an individual capacity, or both. Id. at 167 n. 14. The Ninth Circuit holds that where a caption is silent as to capacity, the guiding inquiry is what capacity or capacities the "basis of the claims asserted and nature of relief sought" imply. Price v. Akaka, 928 F.2d 824, 828 (9th Cir.1990) (*quoting* Cent. Reserve Life Ins. Co. v. Struve, 852 F.2d 1158, 1161 (9th Cir.1988)). *See also* Bishop v. Reed, 940 F.2d 1533, 1 (9th Cir.1991) (complaint seeking damages implies that the suit names defendants in an individual capacity if Eleventh Amendment bars official capacity damages).

Here, the plaintiff has sued the District as well as Gravon and the members of the Board of Directors. Her First Amended Complaint (#26) alleges, as to "Defendants Bret Moore, Kerry Bradshaw, June Brock, Jolee Wallace and Cindy Tilley Case," that "at all times they were members of the Central Point School District Board of Directors and acted in that official capacity and under color of law." As to Defendant Gravon, the complaint alleges that "At all times material he held the position of Superintendent, Central Point School District, in which capacity he acted as defendant District's chief executive officer and under color of law exercised and otherwise asserted authority of the school district."

The complaint also claims that Gravon and each member of the Board "individually and acting in concert" deprived her of her procedural due process rights. Finally, the first claim for relief prays for "Judgment . . . against all defendants in the sum of $406, 751.73 for economic

damages together with the further sum of $1,000,000 for noneconomic damages." By contrast, the other claims for relief pray for judgment specifically against defendant District.

Because the Complaint names defendants in their official capacities, but implies an action against defendants in their individual capacities based on the nature of the claims for relief, the court construes the pleadings to assert claims against the defendants in both their individual and official capacities. *See, e.g.*, Osborne v. City of Burns, Or., 2012 WL 930815 (D. Or. Feb. 27, 2012) report and recommendation adopted, 2012 WL 930234 (D. Or. Mar. 19, 2012) *citing* Price, 928 F.2d at 828. Indeed, in a claim brought under § 1983, a government official will necessarily have acted his official capacity, because acting "under color of law" is a requirement for the cause of action. In such an action, however, the injured party may seek relief from either the individual, or the governmental entity, or both, as in the case at bar.

## IV. Defendants are not entitled to qualified immunity

Gravon and the members of the Board contend that they are entitled to qualified immunity as individuals for any alleged violations of Robinson's § 1983 rights. Qualified immunity is only available to defendants in their individual capacities. *See* Kentucky v. Graham, 473 U.S. 159, 166–67 (1985); Brandon v. Holt, 469 U.S. 464, 472–73 (1985); Owen v. City of Independence, 445 U.S. 622, 651 (1980).

To determine whether the doctrine of qualified immunity applies to individual defendants, the court must decide whether the plaintiff has shown that a constitutional or statutory right has been violated and whether the right at issue was "clearly established" at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). The Supreme Court has held that lower courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances

in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009). The key inquiry is whether the official had "fair warning" that the conduct was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 739–40 (2002).

The constitutional right to a hearing in front of an unbiased tribunal is a basic requirement of due process and is a clearly established right. Withrow v. Larkin, 421 U.S. 35, 47 (1975) ("a biased decisionmaker [is] constitutionally unacceptable."). Thus, the individual Board member defendants are entitled to qualified immunity on this issue only if they acted with honesty and integrity and without bias during Robinson's termination proceedings. *See* Titus v. City of Prairie City, 802 F. Supp. 2d 1210, 1238 (D. Or. 2011) *reversed on other grounds by* Titus v. Horrell, -- Fed. Appx. -- (9th Cir. Oct. 22, 2012) *citing* Withrow, 421 U.S. at 47; Stivers, 71 F.3d at 741). These factual issues must be resolved by the jury.

As discussed in detail above, the law in the Ninth Circuit has clearly established individual liability for state and municipal officials whose improper motive "sets in motion the events that lead to termination that would not otherwise occur," even if that official was not the ultimate decision-maker. Strahan, 287 F.3d at 826 (internal quotations omitted). *See also*, Gilibrook, 177 F.3d at 855. As with the members of the Board, whether or not Gravon's investigation and recommendation to the Board was biased and therefore caused the plaintiff to be deprived of her constitutional right to due process is a question for the jury.

Accordingly, the individual defendants' motion for summary judgment based on the qualified immunity defense regarding Robinson's procedural due process claim is denied.

## V.     State law claims

Federal courts are courts of limited jurisdiction and can adjudicate only those cases which the Constitution and Congress authorizes them to adjudicate.   Kokkonen v. Guardian Life Ins.

Co. of Am., 511 U.S. 375 (1994). Original jurisdiction must be based either on federal question

jurisdiction or on diversity of citizenship. Federal question jurisdiction may exist where a claim

involves the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Except as

provided, "in any civil action of which the district courts have original jurisdiction, the district

courts shall have supplemental jurisdiction over all other claims that are so related to claims in

the action within such original jurisdiction that they form part of the same case or controversy."

28 U.S.C. § 1367(a). The district courts may decline to exercise supplemental jurisdiction over a

claim under subsection (a) if: (1) the claim raises a novel or complex issue of State law; (2) the

claim substantially predominates over the claim or claims over which the district court has

original jurisdiction; (3) the district court has dismissed all claims over which it has original

jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining

jurisdiction. 28 U.S.C. § 1367(c).

In this case, the court has original jurisdiction over the plaintiff's federal law claims

under § 1331. The state law claims do not raise novel or complex issues of state law, nor do

they substantially predominate over the issues of federal law. The court is not dismissing the

claims over which it has original jurisdiction, and there are no other compelling reasons for

declining jurisdiction. Therefore the court will retain supplemental jurisdiction over the

plaintiff's state law claims.

### a. Defendants are not entitled to summary judgment on the state law claims

When deciding issues of state law, this court must interpret and apply Oregon law as the

Oregon Supreme Court would apply it. S.D. Myers, Inc. v. City and Cnty. of San Francisco, 253

F.3d 461, 473 (9th Cir.2001). If no decision by the Oregon Supreme Court is available, the

Court must predict how the Oregon Supreme Court would decide the issue by using intermediate

appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance. Id.

### i.    Accrued vacation pay

Plaintiff has raised a question of material fact as to whether or not she was entitled to compensation for the vacation time she accrued before her contract was amended to cap accrual at 35 days. The fact that the District's own legal counsel believed that her accrued vacation could not be retroactively taken away from her prevents the court from awarding summary judgment to the defendants on this issue. A reasonable jury could conclude that (1) the contracts plaintiff signed after 2006 limited only her prospective accrual of vacation days; and (2) the plaintiff relied on the letter from the District's attorney and continued in her employment thereafter because she thought she would be compensated for the days she had accrued prior to 2006.

### ii.    Termination in breach of contract

Plaintiff's contract with the District classifies her as an "ADMINISTRATOR," and states that the District "will comply with all procedures provided by ORS § 342.805 regarding discipline or discharge of an ADMINISTRATOR." ORS § 342.845(5)(a) states: "An administrator may be dismissed . . . for any reason set forth for dismissal of a teacher in ORS § 342.865." Thus, ORS § 342.865 applies to the plaintiff, as an administrator, and defendants' claim that it does not because plaintiff was not a licensed teacher is not valid.

### iii.    Penalty wages

A reasonable jury could conclude that the plaintiff was entitled to compensation of her accrued vacation days, and that the District willfully failed to pay that compensation upon her

termination, even after notice of nonpayment. *See* ORS § 652.150(1). Therefore, defendants' motion for summary judgment on this claim is denied.

### iv.   Wage claim retaliation

Defendant District claims that the plaintiff failed to give timely notice of her claim for wage claim retaliation under ORS § 652.355 and that the claim fails on the merits. Explaining the notice required under ORS § 30.27(6), the Oregon Supreme Court has held that "[a]lthough a plaintiff must provide a defendant with the facts (*i.e.,* time, place, and circumstances) that relate to the specific claim or claims that a plaintiff ultimately asserts, the plaintiff need convey an intent to assert a claim only in general terms." Flug v. Univ. Of Oregon, 335 Or. 540, 553, 73 P.3d 917, 924 (2003). Thus, in order to provide adequate notice, the plaintiff's original Complaint (#1), which was timely filed, must have alleged the facts giving rise to the ultimate claim, but need not have spelled out the specific nature or theory of the claim.

Plaintiff's original Complaint alleged that for a number of years the plaintiff was entitled to carry forward her unused vacation days without limitation, and to be paid for those days upon termination. The Complaint stated that the contracts were changed in 2006, but that the District's legal counsel agreed that she was entitled to retain 152 days of accumulated vacation, compensable upon termination. The Complaint also alleged that "Defendant Gravon further stated to plaintiff that the board was motivated in its direction to him [to place her on leave] by a District employee's embezzlement at the high school in 2009 and unhappiness about the district's substantial obligation to her for accrued vacation." This allegation implies that the plaintiff's assertion that she was entitled to this compensation caused the Board to tell Gravon to place her on administrative leave and eventually terminate her.

ORS § 652.355 provides that "an employer may not discharge or in any other manner discriminate against an employee" because the employee "has made a wage claim or discussed, inquired about or consulted an attorney or agency about a wage claim." "'Wage claim' means an employee's claim against an employer for compensation for the employee's own personal services, and includes any wages, compensation, damages or civil penalties provided by law to employees in connection with a claim for unpaid wages." ORS § 652.320.

The allegations in the Complaint adequately put the defendants on actual notice that the plaintiff believed she was terminated, at least in part, due to her well-known contention that she was entitled to compensation for her accrued vacation days. Plaintiff has shown sufficient evidence that her claim for accrued vacation days played a role in her termination such that a reasonable jury could find that the District violated ORS § 652.355.

## CONCLUSION

For the reasons stated above, defendants' motion (#35) for summary judgment is DENIED in its entirety.

IT IS SO ORDERED.

DATED this _____ day of December, 2012.

MARK D. CLARKE
United States Magistrate Judge